You can withhold for just a second, Mr. Roth. I will, Your Honor. A lot of consequences out of double parking for pizza here, right? Exactly right, Your Honor. Your Honor, the issue before Your Honors today is whether before the board the appellant made non-frivolous allegations of jurisdiction sufficient to warrant a hearing on the merits of his claim under the Whistleblowing Protection Act. And you're not arguing, I mean you're arguing that you ought to prevail here in the jurisdictional question under the ARRA's, that's the way you pronounce it, under that standard, right? You're not asking us to reject that standard for a more favorable one? No, no, I think it's the non-frivolous allegation. Under the— No, ARRA's though, the standard under ARRA's if it's sort of like non-federal activity of the federal interest— Oh, yes, yes, yes. —if it's implicated— You're right. —or something like whatever that is. You agree with— Some kind of a nexus requirement. Right. I believe there has to be some sort of governmental interest or the allegation affects the government's good name in some way. So I guess I'd like you to point me to something other than your brief, the record below, where your client made some non-frivolous allegation with respect to the government's interest. Well, I believe, Your Honor, that the government had an interest here because it has a normal and understandable interest in seeing that its agents comply with its own standards of conduct. In other words, if you look at how this came about, my client gets arrested— But can I ask you— Yes. Yeah. You have an opportunity to talk, but my question was, what, aside from attorney argument that you've made in the brief, and I guess I'll include before this court, I'm wanting to look at what in the record— the AJ rejected it for non-jurisdiction, and we're looking at her decision in that regard. What did you point her to? What argument were made? What facts were alleged with respect to that governmental interest? The interest was that the federal government, the agency in this case, had an interest in making sure that its own agent— and I'm talking about my client, Mr. Perez— complied with its standards of conduct. It was in that context of that investigation of his conduct that my client made the allegations against the police officers. In other words, whether or not there was legitimate conduct which warranted his arrest was the issue that was legitimately before DEA— So you're saying that answers the question. It does. It's sort of circuitous. If they could take— the fact that they could take some action against him for his conduct means that their interest was implicated in the first place. Yes. Let's leave that point for aside. The other argument, it seems to me, you make in the brief is that given all the goings on here between NYPD and DEA, there was, in fact, a government interest here predicated on the fact that embarrassment or pressure or whatever. Did your client below, before the AJ, ever point to anything or even allege that in any way, shape, or form? That kind of interest before the AJ? That kind of interrelation? Yes. But I don't think that's disputed by anyone. Well, okay. The answer is yes. So can you point me to what in the record your client alleged with respect to that governmental interest? Yes. His affidavit is in the record. And basically, in order to establish causation here, my client submitted an affidavit where he said that before I made these allegations against these police officers, this was going to be handled in-house. It wasn't a big deal. My supervisor told me it wasn't a big deal. I then make these allegations against these police officers. And I'm then told by both of my supervisors, first and second level, that he should not have done that. He shouldn't have gotten a lawyer. He shouldn't have reported these cops. And there were going to be much more serious consequences as a result of that. Now, I think you can infer, Your Honor, from those facts, which are in his affidavit, that with the New York City Police Department. The other interest, Your Honor, and I think, quite frankly, my best case is the first argument that I made. And that is that DEA interviewed these police officers. Their conduct that evening was relevant from the beginning with respect to what discipline my client would get. They were actually interviewed. And DEA had to come to the conclusion at some point, was this man's conduct that evening sufficient to warrant his removal? And they interviewed the police officers and assessed their conduct in order to be able to effectively do that. Mr. Roth, what should we conclude from the kind of late arrival of this whistleblowing? It happens kind of on the brink of disciplinary action against Mr. Perez. Yes, Judge, and I'll go beyond that. I think it actually happened. At the encouragement of counsel, which is kind of a further... I think the cases are pretty clear that the motive of the whistleblower is irrelevant. In other words, if he has his own personal motives for doing something, and I would concede in this case, Mr. Perez did. There's no doubt about it. He reported these matters in part because he knew he was going to face discipline and he wanted the record to be complete. But there are cases, and there are a good amount of board case law that says the motivation of the individual making the disclosure is irrelevant so long as it falls within one of the delineated categories. And in this case, the category would clearly be a violation of law, rule, or regulation. The disclosure here is what, that he told his superiors that he was filing a case against the NYPD? No, Your Honor. The first disclosure is to the civilian review board in New York City. He actually went to the precinct and filed a complaint. That's controlled. That's under the NYPD. There's no federal connection between those. I would concede that, Your Honor. So on the first point you were making about the standards of conduct... Yes. They didn't fire him for violating the standard of conduct not to file a complaint. The standard of conduct had not to do with the complaint. It had to do with, maybe it was related to the conduct, which in your view may have led to the complaint. But it wasn't the complaint itself that was the violation of the standards of conduct. That's why I'm not understanding... It wasn't the violation, but it was the causation between the penalty that he got. He was removed. There is no question, Your Honor, that the conduct that he committed that night, i.e. double parking, going through a red light... Right, but not the conduct of filing the complaint with the civilian review board at the NYPD. It got worse after that. It's not that... Wait, so where is the allegation of causation? Are you alleging in the underlying case, would it be an allegation that by filing the complaint with the civilian review board, that led to his firing? Yes. That's the argument that we make on causation, and it's in his affidavit. Okay, but that filing wasn't the... So that's what we're looking at, the filing with the civilian review board. That was not the basis for the standard of conduct violation. Well, they allege that he violated the standards of conduct in other ways. They didn't say, you violated the standards of conduct by filing a complaint against police officers. Of course, they wouldn't do that, because that's obviously not a violation of the standards of conduct. But what I'm saying is that it was pretextual. Once he filed that, he was getting removed, even though the underlying conduct that he was being investigated for was relatively bland. It was not a fireable offense, but it got infinitely worse when he, for him, and it's clear... Well, if your allegations for non-filibus complaint are the pretext, then what evidence, what argument did you make to the AJ with respect to the pretext? My client's affidavit, Your Honor, basically he was told by his supervisor, this is going to be handled in-house, it's not a big deal. He then files with the complaint with the New York City Police Department. He then has a meeting with his supervisors. They are obviously very upset about the fact that he has done this, and his supervisor then tells him, it's much worse now. We can't handle it in-house. It's going to go to the Office of Professional Responsibility. But did your client allege any arguable motivation for his supervisors in the DEA caring about whether he filed the complaint or not? No, but I think that's circumstantial, and I think it can be inferred. In other words, and the argument I... What can be inferred? What can be inferred? I think you can infer that they have a relationship with the New York City Police Department. They work together with them on a daily basis in their task forces, and they don't want one of their agents making these kinds of embarrassing allegations about their police officers. Well, did your client... I mean, did anybody ever say that to the AJ as a basis for establishing a non-filibus claim? Or you said to the AJ... Nobody even said, and you ought to refer from this to that, right? I made the argument inferentially based on the facts set forth in my client's affidavit. In other words... You made the argument to the AJ? Yes. Yes. And where is that? Is there a transcript? Was that done in writing? I mean, we have the affidavit, but I don't think we have the... Whatever the affidavit may have been attached to. What is not in the record, Your Honor, we have all the facts in the record, but we don't have the actual briefing itself in the record, and I apologize for that. But the underlying facts that exist are in my client's affidavit, which is in the appendix. I want to save your rebuttal time, Mr. Giroir. Yes, Your Honor. Thank you. Ms. Stern? May it please the Court. This appeal was dismissed by the Board on a threshold issue as to whether or not Mr. Perez made a protected disclosure. The Whistleblower Protection Act was designed to encourage federal employees to speak out about wrongdoing in the federal government. Mr. Perez spoke out about alleged wrongdoing... Let's assume, hypothetically, we've got a case, and let's assume we're dealing with the heiress standard, because I know the government argues in the alternative we ought to reject that, but let's assume we're governing by that. And an employee, he alleges before the AJ that the DEA had a very close daily working relationship with the NYPD. And when the NYPD got wind of the fact that he might be filing a civilian claim against them, they called the DEA and they said, we're never going to deal with you again. Forget it. No favors, no nothing, because this is going to be an absolute humiliation for us. So the DEA is really going to get stuck with not having cooperation by the NYPD for all of its investigations. Would the government say that that would satisfy the Rx test and that would be a protected disclosure? They might, but it's completely not the situation in this case. He didn't make those allegations. Well, okay. I mean, let's accept that. I mean, I'd call it a... He would have to allege... But it does... Does... Would that satisfy the standard? He would not... I would say that under the heiress standard, he would not only have to allege a close working relationship, but that there was some element of even oversight by the department over what the New York police officers were doing. In heiress, the outside agency that was basically doing the work of the federal agency was sort of effectuating its mission. The board found that the federal agency that was involved had oversight responsibility and that if they didn't do something to correct the situation, wrongdoing would keep on happening. And in essence, even though the board didn't really come out and say this, the federal agency bore some responsibility by saying silent for allowing wrongdoing to occur. The test doesn't seem to require that. The test says that the government interests are implicated. And that's how the board... Did you dispute that in my hypothetical, the government's interest, the DEA's interest was implicated? In your hypothetical, your hypothetical assumed that they were working very closely. I'm saying that it would have to be such close, and maybe I need more facts from your hypothetical, it would have to be such a close working relationship that you could really say that wrongdoing by the New York police officers would reflect poorly on the government, would implicate its good name, that the government had some kind of oversight, was allowing this to go on. So it would really have to have the kind of facts that were present in heiress, which is certainly not... I don't think it's present in your hypothetical, I would have to know more, and it's certainly not present in this case. There were no allegations to that effect whatsoever. What about the inferences that the other side said could be drawn from the affidavit that was presented? The affidavits alleged, in his affidavits, Mr. Peres alleged that when his supervisor found out that he had filed the complaint, the supervisor was upset because he would no longer... That kind of made it just elevated, made it a bigger issue, got other people involved. It didn't say that he was upset because it reflected badly on the government, or because there was some close working relationship between the government and the New York police officers. There was absolutely... I mean, that's not even inference, that's just tying two completely unrelated things together. There's nothing in that affidavit, and nothing anywhere else in this record, that at all There's just nothing there. There might be times that they worked together. There could be evidence that could be introduced, but there wasn't in this case. You're saying that the DEA and the New York police don't work together. I'm not saying they do or they don't. I think it's entirely possible that they do. I could speculate that there are drug cases where they need to work together. I'm saying on this record, and Mr. Peres had the burden of establishing jurisdiction before the board, there's nothing that exists to suggest that. That was not put in the record below. And that's what the administrative judge found. The administrative judge looked at the facts, looked at what was in the record, and said, there's nothing here. The only thing that Mr. Peres had really argued to the administrative judge was, as he did today, that the government had an interest in the conduct of the New York city officers because they needed to make some judgments about that conduct when they were judging Mr. Peres' conduct. So just in the context of the personnel action against Mr. Peres, that that was the nature of their interest. But as we explained in our brief, merely because the government is interested in the conduct, the purpose is looking at its personnel action. That's not the same as having the government's interest implicated by the New York city officers. So it's a distinction between just having an interest in something or sharing a common interest. And here, there was no shared common interest. Why isn't his report of improper conduct by the New York city police department sufficient to constitute a protected disclosure? Because this court has said, and the legislative history of the Whistleblower Protection Act suggests, that what is protected is a disclosure about wrongdoing by the federal government. There have been several statements by this court that suggest that the Whistleblower Protection Act is to encourage federal employees to come forward to report wrongdoing by the federal government, not by outside parties. I'm certainly aware of those cases. But I'm not aware of any case that says the Whistleblower Protection Act only extends to cases involving reporting of wrongdoing relating to government interests. And the plain language of the Whistleblower Protection Act is not so limited, correct? That's correct. And this court, I don't think, has directly had the opportunity to rule on that issue. There's no case that I'm aware of. Maybe you can correct me if I'm wrong. There are lots of cases that talk about how the Whistleblower Protection Act is designed to encourage the disclosure of wrongdoing by the federal government and all of that. But nothing that says that's all it's intended to do. That's correct. There is some legislative history that seems to be focused on that, but that's not what the Act says. Well, I agree that this issue has not come up before this court yet, which is why in our brief we argued in the alternative. We said, first, we don't really think that the Act reaches non-federal employees, and we cited to the legislative history, and I think the legislative history strongly supports that position. In the Senate report, there was language explaining that the purpose of the Act was to protect federal employees who uncover efforts, quote, in their agencies. But then we went ahead and we said, but even if this court goes along with the board, adopts the board's test as it was explained in Aris, we still say that Mr. Perez's allegations in this case don't rise to the level of admitting the board's test. What about the gas fumes? The gas fumes? Yeah. This court has held that in order to constitute a disclosure, that Congress specifically selected the word disclosure rather than report to indicate that whatever is alleged as the whistleblowing disclosure has to have revealed something that was previously hidden. The administrative judge found on the basis of the undisputed facts in this record that the matter of the leaky vehicle— Other agents knew of it already, but perhaps he was reporting that the problem has become more severe. Well, I'll answer that question in two ways. It wasn't— A certain degree to which a disclosure always reveals something that wasn't known, if only that it is being reported again, so it must be persisting as a problem. Well, two answers to your question, Your Honor. First of all, the administrative judge didn't just find that some other agents knew. She found that the agency as a whole knew that a year before Mr. Perez mentioned this in one of his written reports, a supervisory, a backup supervisory agent had actually filed a monthly report indicating that the vehicle had some difficulties. It had gone out to mechanics, so even outside the agency, the issue was known. So it was more than just a couple of agents that knew it. Secondly, the administrative judge specifically looked at the question of whether Mr. Perez had reported something new, like a failure to repair or something like that. But what difference does it make? Let's say that Judge Rader reports one year that there's a leak in a nuclear power plant, and he and I both work there. And he goes to his agency official and they cover it up. And then two years later, I discover the leak as another employee, and I go to the Washington Post. And I say, there's a leak here. So I shouldn't get the protection of being a whistleblower because the agency covered up Judge Rader's previous disclosure? Well, I think there's a very important distinction in your, I wouldn't say you don't get the protection there, but there's a very important distinction between your hypothetical and this case. In your case, you went to, you revealed it to a public to which it was not known. You went to someone different outside the agency. It was unknown at that level or in the public, the media. Oh, so you can do it, a duplicate disclosure is still a disclosure as long as it's made to someone other? Right, because it's revealing something unknown to that other. If you're just revealing, you go to your supervisor and take the risk of revealing some substantial health hazard. So unknown is to the person to whom the disclosure is made? Yes. Although, of course, if it was revealed to the public, then that would, you know, it encapsulates everybody. But if it was just revealed to one individual in the agency and then someone else came along and revealed it, you know, to a higher level in the agency, for example, that could be a protected disclosure because it would still reveal something that was hidden at that level. That's not what happened here. Everyone in the agency knew about it and Mr. Perez mentioned it in one of his memorandums and he wasn't coming forward and disclosing and revealing something, didn't go to the whistle or something like that. He was just the second person to come along. Once the whistle is blown, once that alarm is going off, the fact that somebody else also adds their alarm to the ongoing alarm at the same level, that's not a protected disclosure. That's what the court said, this court has said, that's why Congress specifically selected the word disclosure instead of just saying report. Other people report things that are already disclosed. Just going back to Judge Lynn's question, is the government advocating, you know, on a clean slate, something at the other extreme? It seems to me you mentioned the fact that there could be the one position which says law is not modified, it covers everything. Then there's the middle position which is Arez. Is the government contending at the other side that even if the government has a serious interest, if it's not the federal government action, then they're not covered under the whistleblower statute? Right. I guess you could say we have sort of three, an initial position and then sort of two fallback positions. I guess is that what you're asking me? Initially, I would say the government's position is that if it's not federal. Well, I guess what I'd like to hear is how the government is construing the statute, not just sort of what their legal positions and fallbacks are for purposes of winning this case. I mean, the government's position that the statute covers no one, even if there's no one on the outside or for disclosures on the outside, even if there's a substantial government interest. Right. That's the government's position. In other words, our position is that the Whistleblower Protection Act, according to legislative history, covers only wrongdoing by the federal government. All I'm saying, I didn't mean to suggest we were offering three different interpretations of the statute. So if I implied that it was entirely, I misspoke. That's our interpretation. What I'm saying is if the court disagrees with us and agrees with the board that there are times that non-federal actors could implicate the federal interest and thus implicate the Whistleblower Protection Act, this case doesn't rise to that standard. So if the court disagrees with our interpretation and agrees with the board, this case still doesn't meet the standard that was set out by the board. And I think we've actually already covered through your questions both of the alleged disclosures, the gas fumes, and the one involving the New York City police officers. And so I think I would just leave the court with this language from the Huffman case, in which this court said, the Whistleblower Protection Act was established to protect employees who go above and beyond the call of duty to report infractions of law that are hidden. And with respect to the gas fumes, I think it's very clear when you look at the facts of this case in light of this court's holding in Huffman that Mr. Perez's mention of the problem in that vehicle does not rise to that level. And for all those reasons, we respectfully request that the court affirm the decision of the court. Thank you. Ms. Stern, Mr. Roth, you have four and a half minutes. Thank you very much. With respect to the gas fume issue, one of the categories of disclosures involves health and safety. Is it whistleblowing if you just kind of are performing your natural responsibilities? I mean, it's kind of your duty to report that your equipment isn't working. Is that going above and beyond in the Huffman sense? Judge, it depends how you do it. I think under Huffman, if it is part of your normal duties to do it, it's generally not covered. And the incident that happened in 1996, the A.J. talks in his opinion about an incident that happened in 1996, that was precisely part of that agent's normal duties. Because they drive government cars, these agents have to fill out monthly reports. How much mileage, how much gas, and if there's anything wrong with the car, you've got to put it down. And this agent wrote on that report, gas fume, smell in the car. That is a Huffman, in my opinion, and that is not whistleblowing. So it's not disclosed in the whistleblowing sense. I believe my client did it sort of out of the normal chain. He's doing it in memoranda to his supervisors, which is a lot different than a monthly vehicle report. So I would make that distinction. And the other thing is, the fact that it's known, to me, on an issue of safety and health is irrelevant, because it wasn't remedied. It's very dangerous. Do you have a case to support that? No, but I don't think there are cases either way. In other words... How can it be a disclosure if it was already known? Well, there's... By analogy, the Gady case is a board case where a librarian goes and reports the fact that people, or they have a policy where smoking is permitted in the library. She goes and reports it, and she says it's creating a fire hazard and unhealthy condition. Well, first of all, it couldn't have been a shock to anybody that people were smoking. That wasn't hidden. They're smoking out in the open. It's the policy that people are smoking. It also wasn't hidden that it's a health hazard. Everybody knows that. Or that it could be a possible fire hazard. So I think the Gady situation is just like this situation. It wasn't remedied, is the issue. The fact that somebody reports it on a form in 1996 and the problem still exists a year later, to me, if you accept that as a disclosure, you're defeating the purpose and the intent and the remedial purpose behind the whistleblowing statute. Was that the pleading? Was that the allegation that this was not remedied? No. No. But I think that's an inference you can make. He, my client, repeatedly said, everybody knows about this. But he was the only one that remedied it. So by inference, it hasn't been taken care of. I think that's something that's obvious without him saying it. Mr. Roth, I'd like to return to, I think, the first question we had from Judge Prost, and that is, does the record show anywhere a federal interest in the conduct of New York City Police? Well, Your Honor, let me just say this. I went to my client's affidavit, and it's in the appendix, and the affidavit begins on page 112, but I'm at page 115. Paragraph 8. My client says, initially, I was told by G.S. Collier, his immediate supervisor, that my conduct that evening was not particularly serious and that hopefully the matter might be handled internally by the Newark Field Division. This changed substantially after ASAC Rondike, his second-level supervisor, received my March 18, 1997 memorandum in which I described my CCRB complaint and the manner in which the gas fumes in my government vehicle affected me that evening. He then goes on to talk about the meeting and the fact that he's getting cross-examined by his ASAC, his second-line supervisor. Why did you do this? Why did you report these cops? Now you're in much bigger trouble, and now we can't keep it in-house. We can't contain this thing. This is going to be a major investigation. And after that, he walks out with his first-line supervisor. So we're still left with an inference. Exactly. I agree with that, Your Honor. Thank you very much. Well, thank you very much, Mr. Roth. That concludes our hearing for this morning.